IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE L. FERGUSON and GEORGIA A. FERGUSON,<br><br>        Plaintiffs<br>  v.<br><br>USAA GENERAL INDEMNITY COMPANY,<br><br>        Defendant | CIVIL DIVISION<br><br>No. 1:19-cv-00401-SHR |

**BRIEF IN SUPPORT OF MOTION TO SEVER AND STAY DISCOVERY OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

AND NOW, comes the Defendant, USAA General Indemnity Company ("USAA GIC"), by and through its attorneys, Burns White LLC, and files the following Brief in Support of its Motion to Sever and Stay Discovery or, in the Alternative, for Protective Order.

### I.  INTRODUCTION

Plaintiffs' claim for underinsured motorist ("UIM") benefits is ongoing and pending before this court. Yet Plaintiffs claim that they are entitled to USAA GIC's mental impressions opinions, and conclusions regarding Plaintiffs' UIM claim - including settlement evaluations - merely because Plaintiffs have simultaneously filed a bad faith claim.

A severance of the bad faith claim from the contractual UIM claim and a stay of discovery pending adjudication of the UIM claim is necessary to avoid the

prejudice that would result to USAA GIC if Plaintiffs are entitled to discovery of USAA GIC's settlement evaluations and other opinion work product regarding the UIM claim simply because Plaintiffs have included a bad faith claim in their Complaint.[1]

## II. PROCEDURAL HISTORY OF THE CASE

On February 5, 2019, Plaintiffs initiated this action arising out of Plaintiffs' claim for underinsured motorist ("UIM") benefits as a result of a July 23, 2017 motor vehicle accident. In Plaintiffs' Complaint, Plaintiffs assert claims for breach of contract seeking underinsured motorist benefits (Count I) and statutory insurance bad faith (Count II).

On July 22, 2019, USAA GIC produced all non-privileged portions of its claim file, along with a privilege log. A copy of the July 22, 2019 privilege log is attached as Exhibit A.

Plaintiffs now seek the privileged documents from USAA GIC's claim file. Plaintiffs also seek the deposition of USAA GIC's claim representative, Beth Ricks.

## III. STATEMENT OF PERTINENT FACTS

This action arises from a claim for underinsured motorist ("UIM") benefits. On July 23, 2017, Plaintiff Dale Ferguson was involved in a motor vehicle accident

---

[1] The UIM claim involves nothing more than a genuine dispute over value. As such, there is no merit to the bad faith nor any reason to have filed the bad faith claim prior to the resolution of the UIM claim.

while riding his bicycle. See Complaint at ¶ 11. Plaintiffs allege that the driver of the vehicle was responsible for causing the accident, and seek UIM benefits under their USAA GIC policy. See id. at ¶¶ 13, 21. There is a genuine dispute as to the value of Plaintiffs' claim for UIM benefits.

In connection with Plaintiffs' UIM claim, USAA GIC documented certain opinions regarding Plaintiffs' damages. These events are chronicled in greater detail in the privilege log and some specific examples follow:

- Mental impressions, opinions, and conclusions regarding the value and merits of claim (e.g., FERGUSON 000012, 000632-000634, 000705-000707).

- Reserves (e.g., FERGUSON 000010, 000012, 000017, 000681, 000690, 000700).

### IV.   STATEMENT OF THE QUESTION INVOLVED

1. Whether this Court should sever Plaintiffs' bad faith claim from the UIM claim and stay discovery on Plaintiffs' bad faith claim where USAA GIC would suffer prejudice if all claims were to proceed simultaneously?

    *Suggested Answer*: Yes.

### V.   ARGUMENT

**A.   USAA GIC Will Be Prejudiced if It is Required to Produce its Mental Impressions, Opinions, and Conclusions Regarding Plaintiffs' UIM Claim While that Claim is Ongoing.**

It is axiomatic that relevance does not trump privilege, and that USAA GIC's mental impressions, opinions, and conclusions regarding the value and merits of Plaintiffs' UIM claim are privileged while that claim is ongoing.

Numerous federal court cases within the Third Circuit have held that an insurer is not required to produce its mental impressions, opinions, and conclusions regarding an ongoing insurance claim.  See, e.g. Parisi v. State Farm, 2017 WL 4403326 (W.D. Pa. 2017) ("this Court rejects plaintiffs' argument that the requested documents are not subject to the attorney-client privilege simply because they were prepared in the ordinary course of business"); Maiden Creek T.V. Appliance, Inc. v. General Cas. Ins. Co., 2005 WL 1712304 (E.D. Pa. 2005); Consugar v. Nationwide Ins. Co., 2011 WL 2360208 (M.D. Pa. 2011); Robertson v. Allstate, 1999 WL 179754 (E.D. Pa. 1999) (applying work product doctrine to limit plaintiff's attempt to discover the unredacted claim file and all documents associated with the file); Fidelity & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516 (E.D. Pa. 1996) (rejecting the notion that the work product doctrine does not apply to claim files); Dombach v. Allstate, 1998 WL 633655 (E.D. Pa. 1998) (denying motion to provide entire case file in bad faith lawsuit because "I cannot find that [plaintiff] has overcome defendant's assertion of privilege" over documents in case file and bad faith statute does not create an exception to privilege); Provident Life & Acc. Ins.

Co. v. Nissenbaum, 1998 WL 800323 (E.D. Pa. 1998) ("mere claim of bad faith is not enough to shatter the privilege").

The information that USAA GIC redacted based upon the work product doctrine constituted mental impressions, conclusions, opinions, and legal theories that were "by [their] very nature . . . prepared in anticipation of litigation, and consequently, [are] protected from discovery as opinion work product." See Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 139 F.R.D. 609, 613 (E.D. Pa. 1991). Under Pennsylvania law, UIM claims are "inherently adversarial in nature" and "when it turns to issues such as liability, damages, coverage or even procedure, U-claims become very much like third party claims," such that Plaintiffs' claim was "an identifiable specific claim" for purposes of the work product doctrine from the day it was opened at the request of Plaintiffs' counsel. See Condio v. Erie Ins. Exch., 899 A.2d 1136, 1144 (Pa. Super. Ct. 2006).[2]

USAA GIC would be prejudiced if USAA GIC's mental impressions, opinions, and conclusions regarding the value and merits of Plaintiffs' UIM claim—including settlement evaluations—were discovered while the UIM claim remains

---

[2] In federal court the standard for work product contains an "anticipation of litigation" element. However, Pennsylvania state law regarding the nature of a UIM claim is relevant to the assessment of when a claim becomes an "identifiable specific claim" for the purpose of applying the work product doctrine in federal court. Additionally, Pennsylvania state law is persuasive regarding the prejudice which would result from requiring an insurer to produce its mental impressions, opinions, and conclusions regarding the value and merits of an ongoing claim.

pending. See Wutz v. State Farm Ins. Co., GD 07-021766 (Allegheny C.C.P. Sept. 9, 2009); Dunkelberger v. Erie Ins. Co., No. 2010-01956 (Lebanon C.C.P. 2011); Hartman v. Schofield & Progressive Direct Ins. Co., No. 2009-11956 (Bucks C.C.P. 2010); Bouselli v. Progressive, 10-CIV-8804 (Lacka. C.C.P. 2011). As stated by the courts in Wutz and Dunkelberger, prejudice would occur based upon the tactical advantage that a plaintiff would obtain through the production of an insurer's mental impressions, opinions, and conclusions regarding the value and merits of an ongoing claim.

Additionally, requiring an insurer to produce its settlement evaluations relating to a claim which is ongoing and pending before the court would effectively foreclose any flexibility during negotiations between insurers and those making claims. The prejudice that would occur if a plaintiff were entitled to discover an insurer's mental impressions, opinions, and conclusions would foster the filing of bad faith litigation even in cases where there is no legitimate basis for the same, as it would permit the plaintiff to obtain information regarding the insurer's strategy for the UIM claim and the insurer's settlement evaluation merely by paying a filing fee.

In light of the prejudice that would occur if a plaintiff was permitted to obtain an insurer's mental impressions, opinions, and conclusions regarding an ongoing UIM claim, USAA GIC requests that the court sever and stay discovery of the bad

faith claim if Plaintiffs insist upon the discovery of its mental impressions, opinions, and conclusions while the UIM claim was ongoing.

### B. Other Courts have Ordered or Approved Severance and a Stay of Discovery Under Similar Circumstances.

The United States District Court for the Eastern District of Pennsylvania has found severance to be appropriate in a directly analogous case. In Reinhart v. Progressive Ins. Co., No. 09-cv-1167 (E.D. Pa. Apr. 16, 2009), the Honorable Juan R. Sanchez issued a Scheduling Order effectively providing for severance and a stay of bad faith discovery until the conclusion of the trial on Plaintiff's UIM claim after Progressive filed a Motion to Sever and Stay. A copy of Judge Sanchez's April 16, 2009 Order is attached hereto as Exhibit B.[3]

The question of whether to bifurcate the UM/UIM claim from a bad faith claim has been addressed by the trial courts in Pennsylvania. See, e.g. Boerner v. Progressive, No. 2008-C-0499 (Lehigh CCP May 1, 2008) (Exhibit C); Gunn v. The Automobile Ins. Co. of Hartford, Connecticut, No. GD 07-002888 (Allegheny CCP July 25, 2008) (Wettick, J.), appeal denied, 971 A.2d 505 (Pa. Super. 2009) (Exhibit

---

[3] See also, Rossi v. Progressive Ins, No. 09-cv-876 (M.D. Pa. Oct. 7, 2009) and Fisher v. Harleysville Mut. Ins. Co., Civ. A. No. 1:09cv55 (N.D.WV. Oct. 13, 2009). In Rossi, Progressive sought bifurcation and a stay of bad faith discovery pending resolution of the UIM claim. Both plaintiff and the Court agreed that bifurcation and a stay was appropriate.

D); Wutz v. Smith, No. GD 07-021766 (Allegheny CCP Sept. 9, 2009) (Wettick, J.) (Exhibit E).[4]

In Boerner, the defendant filed a motion to sever the bad faith claim from the underlying UIM claim and to stay discovery of the bad faith claim pending resolution of the UIM claim.  The court issued a Scheduling Order effectively providing for a bifurcation and stay of the bad faith claim from the UIM claim.

In Gunn, the defendant filed a motion for protective order seeking to bifurcate and stay discovery on the bad faith claim until the underlying UIM claim was resolved.  The Honorable R. Stanton Wettick acknowledged that bifurcation and a stay is appropriate in other jurisdictions that afford protection to privileged materials under the work product doctrine.  However, Judge Wettick declined to stay discovery of the bad faith claim based on two significant considerations not present in this matter.  First, the decision in Gunn was dictated in part by the fact that the bad faith claim would be decided in a non-jury setting, and Judge Wettick believed that the judge presiding over the UIM jury trial would ordinarily be in the best position to decide the case immediately after the jury trial.  Since there is a right to

---

[4] Other Pennsylvania trial courts have addressed the very different issue of whether UM/UIM claims should be severed from a negligence claim against a tortfeasor. See, *e.g.* Collins v. Zeiler, No. GD 08-014817 (Allegheny CCP 2008), Moyer v. Harrigan, 1684-2008 (Lackawanna CCP 2008), and Jannone v. McCooey, 2320-2008 (Pike CCP 2009).

a jury trial for bad faith cases in federal court, that consideration of judicial economy is not relevant in federal court.

Second, Judge Wettick emphasized that his decision was predicated on the limited protection afforded to "trial preparation materials" under by Pennsylvania Rule of Civil Procedure 4003.3.  Pursuant to State Rule 4003.3, "the only trial preparation material that is protected with respect to a party's representative other than a party's attorney is the representative's 'mental impressions, conclusions or opinions respecting the value or merit of a claim or defense respecting strategy or tactics." Id. at 7.  Judge Wettick, however, recognized that under Federal Rule of Civil Procedure 26(b)(3), an insurer's "work product" more broadly includes any material "prepared in anticipation of litigation or for trial by or for another party or its representative."   Id. at 10.  Judge Wettick thus discounted and distinguished the case law from federal courts and the state jurisdictions that have adopted the federal work product doctrine embodied in Rule 26 based on this crucial difference:

> In deciding to stay the bad faith proceedings, the critical issue for the courts is usually whether discovery of the insurance company's work product, protected by the relevant discovery rules, will result in prejudice to the insurance company.  **However, the protection afforded work product in other jurisdictions is much broader [than in Pennsylvania state court].**
>
> \*   \*   \*
>
> Thus, the issue which courts of other jurisdictions address is whether the insurance company will be prejudiced by

> furnishing reports that have evidentiary value such as summaries of interviews with witnesses, reports of investigators hired by the insurance company, etc. In Pennsylvania, these reports are discoverable for the UIM claim. Consequently, rulings in other jurisdictions which stay proceedings in order to preserve the work product protection afforded trial preparation materials do not apply to Pennsylvania.

Id. at 10-11 (emphasis added). As such, while the expansive work product protection may not have applied in Gunn, it will certainly apply in the United States District Court for the Middle District of Pennsylvania based upon the provisions of Rule 26.

It is not apparent that Judge Wettick received argument in Gunn on the additional issues of prejudice which counsel that severance is proper—i.e., the fundamental differences in the nature of the evidence regarding a UIM claim and a bad faith claim, the deprivation of an insurer's full array of affirmative defenses such as advice of counsel, and the potential disqualification issues flowing from the possibility that the insurer's UIM attorneys may be witnesses in the bad faith litigation.[5] But he did receive some of those arguments in his more recent Wutz decision.

---

[5] In Gunn v. The Automotive Ins. Co. of Hartford, 971 A.2d 505 (Pa. Super. Ct. 2009), the Superior Court denied Hartford's appeal of Judge Wettick's decision because Judge Wettick's Order did not qualify as an appealable collateral Order. The majority did not address the merits of the appeal. However, in a dissenting opinion, Judge Lally-Green noted that she would have granted the appeal. She also discussed the merits. Judge Lally-Green noted that the trial court's discovery Order carried a significant risk that privileged and otherwise confidential information "will be disclosed prematurely, before there is even an adverse ruling on the underlying

In Wutz, the plaintiffs sought to compel the production of all information contained in the insurer's claim file relative to the evaluation ranges established by the insurer with respect to the plaintiffs' UIM claim and all other relevant information that had been withheld by the insurer. Id. at 1. This material included information pertaining to the factors that were considered by the insurer in connection with its evaluation of the UIM claim and regarding the insurer's opinions and impressions concerning the strengths and weaknesses of the UIM claim. Id. In ruling that the insurer was not required to produce this protected material to the plaintiffs during the pendency of the plaintiffs' UIM claim, Judge Wettick effectively bifurcated the UIM claim from the bad faith claim and stayed bad faith discovery. In so doing, Judge Wettick clarified several limitations relative to his holding in the Gunn decision.

Judge Wettick confirmed that the issue before him in Gunn was a broad and sweeping one—that is, whether bifurcation, a stay of bad faith discovery, and a later trial of the bad faith claim was necessary in every case, as a matter of law. Wutz at

---

claim. In my view, there would most often be no basis for a bad faith claim if the trial court rules in the insurer's favor on the underlying claim." Judge Lally-Green went on to note her concern "that insurers will be forced into unfair settlements as a result of having to litigate and provide discovery on both claims at the same time." Lastly, Judge Lally-Green wrote that "bad faith claims (and discovery thereon) should be routinely stayed until the resolution of the underlying UM/UIM claim. I would hold that the benefits of judicial economy and efficiency cited by the trial court are generally outweighed by the danger of unfair prejudice to the insurer." Id.

1. In this regard, Judge Wettick characterized the argument advanced by the insurer in <u>Gunn</u> as follows:

> Hartford's position was that as a matter of law, the court must in every case try the bad faith claims at a later time following resolution of the UIM claims in order that a plaintiff, in trying the UIM claim, does not have the benefit of information within the insurance company's files.

<u>Id.</u> at 1-2.

Judge Wettick explained that his rejection of the insurer's position in <u>Gunn</u> that the claim must always be bifurcated and tried at a later time was predicated, in part, on the belief that in the state court context, judicial economy may be served if the bad faith case is tried immediately following the adjudication of the UIM claim. <u>Id.</u> Specifically, Judge Wettick explained that because a plaintiff does not have a right to a jury trial for a § 8371 bad faith claim, the judge that presides over the UIM trial is likely in the best position to decide the bad faith case in an immediate non-jury proceeding. <u>Id.</u> at 2. Judge Wettick in <u>Wutz</u> observed as follows on this point:

> The resolution of [the bad faith] issue is likely to depend upon a judge's assessment of the evidence offered to the jury in the UIM proceedings. The judge who tries the UIM claim is in the best position to evaluate the evidence for purposes of the bad faith claim if a non-jury trial of the bad faith claim is conducted immediately after the jury trial of the UIM claim.

<u>Id.</u>

Because there is no such limitation to the right to a jury trial on a § 8371 claim in federal court, the scenario contemplated by Judge Wettick is unlikely to occur such that this particular principle of judicial economy identified in Gunn is inapplicable in the federal court context.

The Wutz decision also confirmed Gunn's recognition that the determination of whether bifurcation and a stay of discovery is warranted should be made on a case-by-case basis:

> In Gunn, I stated that a court, in its discretion, will not necessarily permit discovery of all information in the files of the insurance company relevant to the bad faith claim. The insurance company should have the opportunity to show that discovery of certain information relevant to the bad faith claim will unduly prejudice the insurance company in its defense of the UIM claim.

Id. at 2.

In applying this case-by-case approach prescribed in Gunn, Judge Wettick in Wutz effectively ordered bifurcation and stayed bad faith discovery by ruling that while the UIM claim remained pending, the insurer was not required to furnish information regarding the values that the insurer assigned to the UIM claim, its processes for establishing these values, or its impressions relative to the strengths and weaknesses of the UIM claim:

> In this case, counsel for State Farm states that State Farm would be unfairly prejudiced for purposes of negotiations and trial if it is required prior to the trial of the UIM case to furnish information as to the values it has placed on the

> UIM claim, how it arrived at these values, and its opinions and conclusions on the strengths and weaknesses of the UIM claim. According to counsel, this would be akin to requiring the defense in a football game to furnish its defensive formation for the upcoming play to the plaintiff before the plaintiff selected the play that it would call.

Id. at 2-3.

As recognized by Wutz, USAA GIC would be unfairly prejudiced if it were forced to produce its "defensive formation" during the pendency of the UIM claim. USAA GIC has produced the non-privileged portions of its claim file. If Plaintiffs can review any privileged portions of that claim file and see the values USAA GIC has placed on the UIM claim, how it arrived at those values, and its opinions on the strengths and weaknesses of Plaintiffs' claim for damages, USAA GIC will be prejudiced.

Courts in other jurisdictions have found severance of UM/UIM claims from bad faith claims to be appropriate. For example, in Dahmen v. American Family Mut. Ins. Co., 635 N.W.2d 1 (Wis.Ct. App. 2001), the Wisconsin Court of Appeals recognized the risk of prejudice to the insurer where discovery proceeds on a bad faith claim while an underlying UIM benefits claim against the same insurer remains unresolved. Id. at 6. The Court noted that bifurcation may enhance, rather than defeat, the interests of judicial economy and possible settlement. Id. Accordingly, the Court concluded that the trial court abused its discretion in denying the motion to bifurcate and stay discovery. Id. at 7.

In Wittmer v. Jones, 864 S.W.2d 885 (Ky. 1993), the Kentucky Supreme Court held that the failure to bifurcate the underlying negligence claim from the bad faith claim constitutes prejudicial error.  Although the Court found that no actual prejudice occurred, the Court stated that if it were going to reverse and order a new trial, it would also order bifurcation of the bad faith claim.  Wittmer, 864 S.W.2d at 891.  The Kentucky courts follow the same reasoning when the matter involves a breach of contract claim for UM/UIM benefits and a bad faith claim.  See Motorists Mut. Ins. Co. v. Glass, 996 S.W.2d 437, 450 (Ky. 1997), citing Wittmer v. Jones, 864 S.W.2d 885, 891 (Ky. 1993).  *See also* Jones v. Liberty Mut. Fire Ins. Co., 2007 WL 2287886 (W.D.Ky. 2007) (where the district court "bifurcated the bad faith claims and stayed discovery on that aspect of the case pending final adjudication of the contract claim").

Several other courts have also concluded that bifurcation of a bad faith claim from a UM/UIM claim was appropriate.  See, e.g., Cook v. United Serv. Auto. Ass'n, 169 F.R.D. 359 (D.Nev. 1996); Angel v. Liberty Mut. Group, 2005 WL 1252419 (Ohio Ct. App. May 26, 2005); Estate of Taylor v. St. Paul Cos., 268 F.Supp.2d 873 (N.D.Ohio 2002); Braddy v. Nationwide Mut. Liability Ins. Co., 470 S.E.2d 820, 822 (N.C.App. 1996); Hunte v Amica Mut. Ins. Co., 792 A.2d 132, 135 (Conn.App. 2002); Dakota, Minnesota & Eastern Railroad Corp. v. Acuity, 720 N.W.2d 655 (S.D. 2006).

**C.     Because the Issues and Evidence in a Contractual UIM Claim are Completely Different than in a Bad Faith Case, Severance and a Stay of Bad Faith Discovery is Appropriate, Particularly Because of the Work Product Doctrine Issues.**

The issues in Plaintiffs' contractual UIM claims will be the nature and extent of Plaintiffs' injuries and the amount of damages to which Plaintiffs would have been entitled if the tortfeasor had sufficient insurance. The issues in Plaintiffs' bad faith case are quite different. In Pennsylvania, to recover on a bad faith claim, Plaintiffs must show by clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of a reasonable basis. Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364 (Pa. 2017).

In Zappile v. AMEX Assur. Co., 928 A.2d 451 (Pa.Super. 2007), appeal denied 940 A.2d 366 (Pa. 2007), the court held that an uninsured or underinsured motorist claim is "inherently and unavoidably adversarial." Id. at 255-256, citing Condio, 899 A.2d 1136, 1143-1144 (Pa.Super. 2006). Because UIM claims are inherently and unavoidably adversarial, it would not be appropriate to allow an insured to discover mental impressions, conclusions, and opinions on value, merits, strategy, and tactics of the UIM claim while the UIM claim is still being litigated.

Any such discovery would be inconsistent with the Federal Rules of Civil Procedure, as Rule 26(b)(3) expressly provides that the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a

party's attorney or other representative concerning the litigation." FED.R.Civ.P. 26(b)(3).

Because Plaintiffs will seek to establish that USAA GIC lacked a reasonable basis in "denying" their UIM claim, Plaintiffs have sought discovery of certain privileged information from USAA GIC in the context of the bad faith claims, including, for example, USAA GIC's claim file.  As the Privilege Log indicates, the claim file includes information regarding merits, value, strategy, tactics, and mental impressions.  Likewise, USAA GIC will seek to counter Plaintiffs' assertions of bad faith with evidence supporting its reasonable basis for its handling of Plaintiffs' UIM claims.  To demonstrate its reasonable basis, USAA GIC may seek to affirmatively use certain privileged information, such as evaluations of the claim.  In the event that Plaintiffs' bad faith claims are not severed and discovery stayed, USAA GIC may be forced to choose between a potential waiver of its privileges or loss of critical affirmative evidence.

In addition, severance and a stay of discovery on the bad faith claims should not frustrate judicial economy or waste judicial resources for several reasons.  First, adjudication of Plaintiffs' UIM claim to a result in favor of USAA GIC would likely obviate the need to proceed any further with Plaintiffs' bad faith claim.  Second, prior to the Koken decision, many UIM cases were resolved during or after arbitration and without the subsequent filing of a bad faith lawsuit.  As such,

severance and a stay on the bad faith claims may foster settlement, before costly and potentially unnecessary bad faith discovery occurs. Third, Plaintiffs' UIM claim can proceed very expeditiously through discovery and trial as the distinct issues presented by those claims will be the damages for the motor vehicle accident, rather than the more detailed and time-consuming issue related to the reasonableness of USAA GIC's claim handling. Fourth, the cost of expert witnesses who may be employed solely for the bad faith claims can be deferred and possibly avoided in its entirety.

## VI.   CONCLUSION

USAA respectfully requests that this Court sever and stay discovery related to Plaintiffs' bad faith claim until the resolution of Plaintiffs' UIM claim in order to avoid the inherent prejudice which would result from the disclosure of settlement evaluations relating to a claim which is ongoing and pending before this Court. In the alternative, USAA GIC requests that it be afforded the full protection of the work product doctrine and attorney-client privilege during the pendency of the UIM claim, including a protective order related to the deposition of Beth Ricks.

Respectfully submitted,

BURNS WHITE LLC

By: /s/Kathleen P. Dapper
    Daniel J. Twilla (PA I.D. 93797)
    E-mail: djtwilla@burnswhite.com
    Kathleen P. Dapper (PA I.D. 315993)
    E-mail:  kpdapper@burnswhite.com
    Burns White Center
    48 26th Street
    Pittsburgh, PA  15222
    (412) 995-3286 – Direct
    (412) 995-3300 – Fax
    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on October 21, 2019, the within **BRIEF IN SUPPORT OF MOTION TO SEVER AND STAY DISCOVERY OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER** was filed electronically and served on all counsel of record via the Electronic Filing System.

/s/Kathleen P. Dapper
Kathleen P. Dapper