IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DALE L. FERGUSON and GEORGIA A. FERGUSON,** | : Civil No. 1:19-cv-401 |
| **Plaintiffs,** | : |
| v. | : |
| **USAA GENERAL INDEMNITY COMPANY,** | : |
| **Defendant.** | : Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

Before the court is a motion (Doc. 11), brought by Defendant USAA General Indemnity Company ("Defendant" or "Insurer"), to stay discovery and sever the breach of contract and bad faith claims brought by Plaintiffs Dale and Georgia Ferguson ("Plaintiffs"). For the reasons stated below, the court will deny the motion.

## **I. Background**

This is an insurance coverage dispute. Plaintiffs argue that Dale Ferguson suffered significant injuries covered by their insurance policy, but that Defendant has offered woefully inadequate amounts of money to resolve the underlying claim. Plaintiffs have thus filed breach of contract and bad faith claims, asserting Defendant has failed to carry out its obligations under the policy because of an inadequate investigation into Dale Ferguson's injuries. Plaintiffs originally filed suit in state court, but Defendant removed the case to this court on diversity grounds. (Doc. 1.)

1

On October 21, 2019, Defendant filed the instant motion in which it argues Plaintiffs' bad faith and breach of contract claims should be severed to promote efficiency and protect the insurer from undue prejudice. (Doc. 11.) Specifically, it contends that Plaintiffs' bad faith claim is contingent on success of their breach of contract claim, such that resolution of the breach of contract claim first will determine whether the bad faith claim is viable. Further, it argues that litigating the bad faith claim now would entitle Plaintiffs to portions of the insurance file that are arguably work product or privileged materials which would give Plaintiffs an unfair advantage in pursing their breach of contract claim. Finally, Defendant emphasizes that severing is more judicially efficient because resolution of the breach of contract claim may result in settlement of the entire case.[1]

In response, Plaintiffs primarily argue that this court routinely rejects such requests, instead opting to protect against the disclosure of privileged information by conducting an *in camera* review of claims files. (Doc. 13.) Defendant has not replied. This issue is thus ripe for disposition.

---

[1] Defendant also argues that a ruling in favor of Plaintiffs would open the door to insureds filing bad faith claims in mass "where there is no legitimate basis for" their claims, and thus acquire privileged information "merely by paying a filing fee." (Doc. 12, p.6.) The court does not share Defendant's fear of wily and unscrupulous attorneys waiting at the gates to assault insurers by filing lawsuits without a valid basis. Federal Rule of Civil Procedure 11, Rule 12(b)(6), abuse of process, and malicious prosecution all provide Defendant with sufficient protection from such actors.

## II.  **Standard of Review**

Under Federal Rule of Civil Procedure 42(b), the court is to evaluate a party's motion to sever by considering whether severance will be convenient to the parties, avoid prejudice, and create an efficient method by which the case may be litigated. *See Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984). "The moving party bears the burden of establishing the need to bifurcate." *Consugar v. Nationwide Ins. Co. of Am.*, No. 3:10-cv-2084, 2011 WL 2360208, at *7 (M.D. Pa. June 9, 2011). "[B]ifurcation is wholly within the court's discretion." *Newhouse v. GEICO Cas. Co.*, No. 4:17-CV-00477, 2017 WL 4122405, at *2 (M.D. Pa. Sept. 18, 2017). "[T]he decision whether to stay discovery is [also] committed to the sound discretion of the district court judge" and may only be reversed if "the court had abused its discretion." *White v. Fraternal Order of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990); *see also In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001) (holding the "District Court acted within its discretion" in staying discovery).

### III. Discussion[2]

The court begins its analysis by examining whether Plaintiffs' bad faith cause of action is truly contingent on the success of their breach of contract claim. This court has previously held that a "plaintiff can maintain a bad faith claim even when her breach of contract claim is unresolved or unsuccessful." *Hyjurick v. Cmwlth. Land Title Ins. Co.*, No. 3:11-CV-1282, 2012 WL 1463633, at *8 (M.D. Pa. Apr. 27, 2012). But there are cases in the Eastern and Western Districts of Pennsylvania that appear to hold the opposite. *See Hampton v. Geico Ins. Co.*, 759 F. Supp. 2d 632, 646 (W.D. Pa. 2010) ("[W]here an insurer prevails on a breach of contract claim, there can be no claim for bad faith.") (citing *Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 249 F. Supp. 2d 569, 570-71 (E.D. Pa. 2003)); *but see Winterberg v. CNA Ins. Co.*, 868 F. Supp. 713, 722 (E.D. Pa. 1994) ("[C]ourts have held that success on a bad faith claim under § 8371 does not depend on the success of the underlying insurance benefits claim."). As such, the court now turns to the applicable statute

---

[2] As Plaintiffs correctly point out, several Middle District of Pennsylvania cases have rejected similar requests to stay discovery and bifurcate breach of insurance policy and bad faith claims. *See, e.g., Newhouse*, 2017 WL 4122405 at *3 (M.D. Pa. Sept. 18, 2017); *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014). Instead of addressing these cases—either in its opening brief or by filing a reply—Defendant cites a plethora of cases from other jurisdictions that rely on different procedural rules and bad faith insurance statutes. The court finds these cases unpersuasive. Instead, it will look to applicable Third Circuit procedural case law, substantive Pennsylvania state law, and, as persuasive authority, other federal courts within the Commonwealth of Pennsylvania that have addressed these issues.

4

itself and reviews how Pennsylvania state and Third Circuit cases have addressed the issue.

The Pennsylvania Bad Faith Statute ("Section 8371") creates a cause of action against an insurance company "if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa. C.S.A. § 8371. In *March v. Paradise Mutual Insurance Company*, the Pennsylvania Superior Court directly addressed the question of whether dismissal of a plaintiff's breach of contract claim also warranted dismissal of its bad faith claim. 646 A.2d 1254, 1256 (Pa. Super. Ct. 1994).[3] The court rejected the argument, holding the underlying purpose of the statute is to generally "discourage bad faith practices of insurance companies"; it thus imparts upon insurers a duty to conduct themselves with good faith at every stage of handling an insured's claim. *Id.* As such, "the language of [S]ection 8371 does not indicate

---

[3] Two cases have held that *March* can be distinguished because its holding turned merely on the fact that the plaintiff's breach of contract claim was dismissed on procedural grounds. *See Hampton*, 759 F. Supp. 2d at 645-46; *Messina v. Liberty Mut. Ins. Co.*, No. 95-cv-7093, 1996 WL 368991, at *4 (E.D. Pa. July 1, 1996). The court disagrees that *March* was decided on procedural grounds. *March* held that a limitations period created by a provision in the underlying insurance policy was a sufficient basis for dismissing the breach of contract claim but was insufficient to merit dismissal of the bad faith claim. *See Nordi v. Keystone Health Plan West Inc.*, 989 A.2d 376, 382 (Pa. Super. Ct. 2010) (discussing and reaffirming the holding in *March*). Even if this would nonetheless permit the holding in *March* to be narrowly construed, this court declines to distinguish *March* on such a basis. *March*'s substantive analysis is well-reasoned and illustrative regarding the policies underlying Section 8371, rendering its analysis predictive regarding how the Pennsylvania Supreme Court would likely resolve the issue. *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (citing *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662-63 (3d Cir. 1980)) (holding, when making an *Erie* guess, federal courts should look at the underlying rationale laid out in state intermediate appellate decisions).

that success on the contract claim is a prerequisite to success on the bad faith claim." *Id.* The holding in *March* is not anomalous; it is well-established Pennsylvania law. *See Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1039 n.5 (Pa. Super. Ct. 1999) ("A bad faith action under [S]ection 8371 is neither related to nor dependent on the underlying contract claim against the insurer."); *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 434 (3d Cir. 2007)[4] ("In interpreting [S]ection 8371, this court has **consistently held** that claims brought thereunder are distinct from the underlying contractual insurance claims from which the dispute arose.") (quoting *Nealy v. State Farm*, 695 A.2d 790, 792-93 (Pa. Super. Ct. 1997)) (emphasis supplied) (internal brackets omitted).

In *Frog, Switch & Manufacturing Company v. Travelers Insurance Company*, the Third Circuit, in a footnote, further discussed Section 8371's scope, stating that "[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." 193 F.3d 742, 751 n.9 (3d Cir. 1999). For example, an insurer "refusing to pay without reasonable investigation of all available information" would be liable under Section 8371, even if they were ultimately correct in denying coverage. *See id.* The court further held that, under

---

[4] While *Gallatin* is an unpublished decision, the Third Circuit has explained that its holding regarding the scope of bad faith causes of action is correct. *See Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012).

6

the facts in front of it, "where there was no duty to defend, there was good cause to refuse to defend against a suit." *Id.*

Eight years later, the Third Circuit clarified its holding in *Frog*, explaining that the plaintiff's claim in *Frog* hinged on its allegation that the insurer had denied coverage in bad faith solely because it lacked a good-faith reading of the insurance policy. *See Gallatin Fuels, Inc.*, 244 F. App'x at 434-35. As such, the court's finding that the insurer's interpretation was correct negated the plaintiff's bad faith theory. *See id.*; *see also Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Ins. Co.*, 319 F.R.D. 209, 212 (E.D. Pa. 2017) ("A bad faith claim ***based solely on an underlying breach of contract*** claim generally will fail if a court determines that an insurer did not have a duty to defend the insured based on the contractual agreement.") (emphasis supplied).

But "[a] finding that the insured did not ultimately have a duty to cover the plaintiff's claim does not per se make the insured's actions reasonable." *Gallatin Fuels, Inc.*, 244 F. App'x at 434-35. This is because bad faith includes, beyond baseless denial of a claim, a "*lack of investigation into the facts, or a failure to communicate with the insured.*" *Id.* (quoting *Frog*, 244 F. App'x at 751 n.9) (emphasis in *Gallatin*). For example, in *Gallatin*, the insurer's basis for denying coverage—which it developed during the course of litigation—was valid, but the basis it had given to the insured before litigation was not only invalid but, in context,

7

smacked of dishonesty. *See id.* The court thus found the insurer "liable for bad faith absent duty of coverage on the grounds that it 'dragged its feet in the investigation of the claim, hid information from the insured, and continued to shift its basis for denying the claims.'" *Muckelman v. Companion Life Ins. Co.*, No. 4:13-cv-00663, 2014 WL 957425, at *4 (M.D. Pa. Mar. 12, 2014) (quoting *Gallatin Fuels, Inc.*, 244 F. App'x at 435) (further explaining independent bases for a bad faith cause of action outside of denial of coverage). Indeed, a more "narrow construction of § 8371 would be contrary to [the] statute's deterrent purpose." *Pauling v. State Farm Mut. Auto Ins. Co.*, No. 1:13-CV-01348, 2013 WL 5412079, at *3 (M.D. Pa. Sept. 26, 2013) (citing *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999)).

Such a construction of Section 8371, however, does not leave the insurer out to dry. An insured cannot use a bad faith claim to compel an insurer to provide coverage beyond the applicable policy. In *Ash v. Continental Insurance Company*, the Pennsylvania Supreme Court was tasked with determining whether a Section 8371 claim sounded in contract or tort for statute of limitations purposes. 932 A.2d 877 (Pa. 2007). As part of its analysis, the court discussed earlier case law distinguishing "between the common law contractual duty of good faith and the duty of good faith imposed by § 8371." *Id.* at 884. The court explained that the common law cause of action is a contractually-based claim, but Section 8371 is a statutorily-created tort claim, thus supplementing, instead of supplanting, the common law

8

remedies. *See id.* As such, insureds "may not recover compensatory damages based on Section 8371"; instead, they are confined to the categories of damages expressly stated by statute: punitive damages, court costs, attorney fees, and interest on any underlying compensatory damages. *Id.* (quoting *Birth Center v. St. Paul Cos.*, 787 A.2d 376, 395 (Pa. 2001)); *accord* 42 Pa. C.S. § 8371(1)-(3).

In summary, Pennsylvania's bad-faith insurance statute was designed to generally regulate dishonest conduct by insurers. It is meant to encourage insurers to thoroughly investigate claims made by policyholders, respond to them promptly, negotiate reasonable claim settlements, and generally treat insureds honestly while caring for their interests. If the insurer truly has no contractual obligation to the insured, because their claim does not fall within the scope of the policy, the bad faith statute does not obligate the insurer to give coverage out of kindness of heart. It simply obligates the insurer to take all reasonable efforts to assess the validity and value of the claim before taking such actions, and, if coverage is effective, to carry out its duties honestly. *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1170 (Pa. Super. Ct. 2012) ("[A]n insurer has a duty to act with the utmost good faith towards its insured."). But an insurer's knee-jerk denial letter cannot be saved from triggering the penalties enumerated in Section 8371 merely because the insurer's lawyer is able to construct a post-hoc justification for denying coverage. *See Gallatin Fuels, Inc.*, 244 F. App'x at 435; *Newhouse*, 2017 WL 4122405 at *3

9

(explaining that Section 8371 applies to "'insurers that unreasonably delay the evaluation of the insureds' claims, *even if the insurer's ultimate assessment of the claim proves to be correct*'" (emphasis supplied) (quoting *Ironshore Specialty Ins. Co.*, 319 F.R.D. at 212). Holding otherwise could potentially result in insurers taking the gamble that a denial based on a cursory review will be rescued by a clever trial lawyer.

Having found resolution of Plaintiffs' breach of contract claim is not a pre-requisite to evaluating their bad faith claim, this begs the question of whether the distinctness of the claims supports severing them. The court finds it does not. While the two claims are conceptually distinct, they are "significantly intertwined" from a practical perspective. *Newhouse*, 2017 WL 4122405 at *3 (quoting *Griffith*, 90 F. Supp. 3d at 346). For example, one facet of Plaintiffs' bad faith claim is that Defendant did not, in good faith, attempt to settle Plaintiffs' claim because it conducted an inadequate investigation into the extent of the insured's injury. (*See* Doc. 1, p. 11.) This requires discovery regarding two underlying facts: (1) what was the nature of Plaintiffs' injuries; and (2) what efforts did the insurer make to investigate Plaintiffs' injuries. To prove damages regarding their breach of contract claim, Plaintiffs will have to provide similar facts, and Defendant is likely to test them through discovery. As such, separating out the claims and staying discovery would potentially create a discovery mess, requiring truncated depositions,

interrogatories, and requests for production, only to have them all re-started following the conclusion of the first leg. This risk of judicial inefficiency warrants denial of Defendant's request. *Griffith*, 90 F. Supp. 3d at 346 (holding breach of contract claim and bad faith claim will require overlapping discovery of the plaintiff's injuries, militating against bifurcating the claims).

In short, Defendant's request is, at root, asking the court to manipulate this case's procedural framework in a way that will make litigation convenient for insurers, which the court will not do. *Newhouse*, 2017 WL 4122405 at *2 ("In exercising this discretion, the court is required to weigh the competing interests of the parties and attempt to maintain an even balance.") (internal quotations omitted).

Without bifurcation of Plaintiffs' claims, there is no justification for staying discovery. Nonetheless, the court recognizes Defendant may still have a legitimate privilege or work product claim. This issue, however, is not properly before the court at this time. Defendant has not filed a protective order, nor has Plaintiff yet moved to compel. While Plaintiffs have requested the court conduct an *in camera* review of Defendant's claims file, it will only do so if Plaintiffs show which parts of the claims file they may legally be entitled to. While Plaintiffs' brief fails to do as much, they were unable to in part because Defendant has not provided an adequate privilege log.

As this court has held:

> [T]he adequacy of the privilege log [turns on] whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed. The focus is on the specific descriptive portion of the log, and not on conclusory invocations of the privilege or work-product rule.

*AVCO Corp. v. Turn and Bank Holdings, Inc.*, No. 4:12-CV-01313, 2015 WL 12834519, at *2 (M.D. Pa. Oct. 7, 2015) (quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 406 (D. Md. 2005)). Here, Defendant's privilege log describes the contents of its documents in conclusory ways, depriving Plaintiffs and the court of the opportunity to evaluate the underlying factual basis for its assertions. The court will thus order Defendant to provide an amended privilege log supplying some of the underlying factual bases for its privilege and work product claims—but not so much that it effectively discloses any such privileged information—so that Plaintiffs may raise, by brief, the parts of the privilege log they believe Defendant has failed to show are privileged. The court can then decide whether to conduct an *in camera* inspection of certain portions of the insurer's claim file. *See Parisi v. State Farm Mut. Auto. Ins. Co.*, No. 3:16-cv-179, 2017 WL 4403326, at *9 (W.D. Pa. Oct. 2, 2017); *Consugar*, 2011 WL 2360208 at *2-3 (holding a privilege log and briefing is needed before the court conducts an *in camera* inspection of the insurer's claims file).

## IV. **CONCLUSION**

For the reasons explained above, the court will deny Defendant's motion. The court will also order Defendant to provide an amended privilege log containing a more thorough factual basis for its privilege and work product claims. All other relief requested by both parties is denied. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Date: December 5, 2019